IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **TAMMIE L. JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-07-532-L** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits.  United States District Judge Tim Leonard has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  The Commissioner has answered and filed the administrative record (hereinafter Tr. __).  As the parties have briefed their positions, the matter is at issue. For the following reasons, it is recommended that the decision of the Commissioner be affirmed.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on May 16, 2001, alleging a disability onset date of September 5, 2000, caused by manic depression, obsessive compulsive disorder, post-traumatic stress disorder, bipolar disorder, colon troubles, and stress.  Tr. 53-55, 63.  The application was denied on initial consideration and on

reconsideration at the administrative level.  Tr. 28, 29, 30-33, 36-38.  Pursuant to Plaintiff's

request, a hearing de novo was held before an administrative law judge on May 19, 2003.

Tr. 39, 594-622.  After this hearing, an administrative law judge issued a decision on July 23,

2003, finding Plaintiff not disabled.  Tr. 269-71, 272-81.  The Appeals Council granted

Plaintiff's request for review, and remanded the matter for the administrative law judge to

reconsider after conducting a supplemental hearing.  Tr. 284, 285-87.

A supplemental hearing was held November 30, 2005.  Tr. 623-54.  Plaintiff appeared

in person with an attorney, and offered testimony in support of her application.  Tr. 625-46,

647-49.  At the request of the administrative law judge, a vocational expert also appeared and

testified.  Tr. 299-302, 646, 649-651.  The administrative law judge issued his decision on

April 27, 2006, finding that Plaintiff was not disabled within the meaning of the Social

Security Act, and she was therefore not entitled to benefits.  Tr. 15-17, 18-26.  The Appeals

Council denied Plaintiff's request for review on March 8, 2007, and thus the decision of the

administrative law judge became the final decision of the Commissioner.  Tr. 7-9.

## II.  STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review

as follows:

> We review the agency's decision to determine whether the factual findings are
> supported by substantial evidence in the record and whether the correct legal
> standards were applied. Substantial evidence is such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion. However,
> a decision is not based on substantial evidence if it is overwhelmed by other
> evidence in the record or if there is a mere scintilla of evidence supporting it.
> The agency's failure to apply correct legal standards, or show us it has done

2

so, is also grounds for reversal. Finally, because our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight. However, we may neither reweigh the evidence nor substitute our discretion for that of the Commissioner.

Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotations and citations omitted). To determine whether a claimant is disabled, the Commissioner employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988). The claimant bears the burden to establish a prima facie case of disability at steps one through four. Williams, 844 F.2d at 751 and n.2. If the claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy given the claimant's age, education, and work experience. Id. at 751.

## III.  THE ADMINISTRATIVE LAW JUDGE'S DECISION

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. § 404.1520. Tr. 19-20. He first found that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision. Tr. 20. At steps two and three, the administrative law judge found that the medical evidence indicated that Plaintiff suffers from a combination of impairments, including physical problems, anxiety and cannabis dependence, and that her impairments were severe but not severe enough to meet or equal one of the impairments listed in 20 C.F.R. Part 404, Appendix 1, Subpart P, Social Security Regulations, No. 4. Tr. 20-23. At the fourth step of

the sequential evaluation process, the administrative law judge found Plaintiff has the physical residual functional capacity to perform a wide range of light work. Tr. 23. The administrative law judge concluded Plaintiff retained the mental residual functional capacity to remember only short and simple instructions, carry out only simple routine tasks, perform only simple, unskilled one and two-step repetitive tasks, perform only routine, repetitive, low-stress work, and must work in relative isolation with limited contact with peers and supervisors. Tr. 23-25. Based on this residual functional capacity finding, the administrative law judge concluded that Plaintiff could not perform any of her past relevant work. Tr. 25. At step five, considering Plaintiff's age, education, work experience, residual functional capacity, and the testimony of the vocational expert, the administrative law judge determined there are jobs existing in significant numbers in the national economy that Plaintiff could perform. Tr. 25-26. Thus, the administrative law judge found that Plaintiff is not disabled and, therefore, not entitled to disability insurance benefits. Tr. 26.

## IV.  PLAINTIFF'S ARGUMENTS ON APPEAL

Plaintiff raises three issues for judicial review. She first claims the residual functional capacity finding is erroneous because the administrative law judge did not account for all of her limitations. Plaintiff's Opening Brief, p. 6. Second, Plaintiff contends the administrative law judge's step five finding is not supported by substantial evidence. Id. at 11-14. Finally, Plaintiff alleges the administrative law judge improperly evaluated her credibility. Id. at 14-15.

## V.  DISCUSSION

**A.**     **Residual Functional Capacity Error Based upon Weight Accorded to Treating Physician's Opinion and Credibility Analysis**

Plaintiff attributes the administrative law judge's error in making his residual functional capacity finding to his failure to give controlling, or even substantial, weight to her treating physician's opinion, failure to consider the record in totality, substitution of his own opinion for that of a medical doctor, and selective citation to records supporting the determination of nondisability while ignoring evidence showing Plaintiff's long-term disability.  Plaintiff's Opening Brief, p. 6-9.  Plaintiff explains the administrative law judge erroneously placed controlling weight on the opinion of a consultative examiner and provided no real reason for ignoring the reports of her treating physician and treating licensed professional counselor.  Id. at 9-10.  According to Plaintiff, had the administrative law judge assigned appropriate weight to the evidence, his residual functional capacity assessment would have been more restrictive.  Id. at 11.

In a related issue, Plaintiff contends the administrative law judge erred in his analysis of her credibility.  Id. at 14.  She explains the administrative law judge inappropriately considered her statement that she was "retired."  Id. at 15.  Additionally, Plaintiff alleges the administrative law judge misinterpreted statements indicating she would benefit from returning to work, and should not have considered the fact that she is able to take care of her plants.  Id. at 15.  She also contends the administrative law judge's credibility discussion is insufficient because he did not justify his findings.  Id.

The Commissioner contends the residual functional capacity assessment is correct. Response Brief, p. 5. Specifically, as to Plaintiff's assertion that the administrative law judge did not appropriately consider her treating physician's opinion, the Commissioner explains that the opinion in question is not entitled to any special weight because it is an opinion on an issue reserved to the Commissioner. Id. at 6. Further, addressing Plaintiff's claim that the administrative law judge gave controlling weight to the opinion of a consultative examiner, the Commissioner contends that the record refutes her complaint because it shows that the administrative law judge did not give it controlling weight. Id. at 7. The Commissioner also argues Plaintiff has insufficiently briefed her argument concerning the administrative law judge's alleged failure to give more weight to her treating physician's opinion rather than the consultative examiner's because she has not identified specific conflicts between their respective findings. Id. at 7-8.

Responding to Plaintiff's attack on the administrative law judge's credibility analysis, the Commissioner argues that the administrative law judge fully explained his reasons for drawing an adverse credibility conclusion and applied the correct legal standards in so doing. Id. at 8. In support, the Commissioner discusses the specific evidence upon which the administrative law judge relied in making his credibility finding. Id. at 9-10.

### 1.  Treating Physician Rule

In deciding how much weight to give the opinion of a treating physician, an administrative law judge must first determine whether the opinion is entitled to "controlling

weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quotation omitted). An administrative law judge must give a treating physician's opinion controlling weight if it is both (1) "well- supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."[1] Id. (quotation omitted). After considering the requisite factors, the administrative law judge must "give good reasons" for the weight ultimately assigned to the opinion. 20 C.F.R. § 404.1527(d)( 2). "[I]f the [administrative law judge] rejects the opinion completely, he must . . . give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (internal quotation marks omitted).

However, not all opinions of a treating physician qualify as "medical opinions," which are defined as "judgments about the nature and severity of [a claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). A statement that a claimant is "disabled" or "unable to work" does not necessarily mean that

---

[1] Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the administrative law judge's attention which tend to support or contradict the opinion.

the Commissioner will find the claimant disabled. <u>Id.</u> at § 404.1527(e)(1).  Such a statement is not entitled to  controlling weight or any special significance.  Social Security Ruling 96-5p, 1996 WL 374183, at *2 (July 2, 1996).  <u>See</u> <u>also</u> <u>Castellano v. Sec'y of Health & Human Services</u>, 26 F.3d 1027, 1029 (10th Cir. 1994) (an opinion by a physician that a claimant is totally disabled is not dispositive because the final responsibility for determining the ultimate issue of disability is reserved to the Commissioner.).

Moreover, therapists, nurse practitioners, and the like, are not "acceptable medical sources," and only "acceptable medical sources" may provide medical opinions eligible for controlling weight.  <u>See</u> 20 C.F.R. §§ 404.1513, 404.1527(a)(2); Social Security Ruling 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).[2]  So while an opinion from a medical source who does not qualify as an "acceptable medical source" may not be used to establish the existence of an impairment, it may provide insight into the severity of an impairment and how an impairment affects an individual's ability to function.   Social Security Ruling 06-03p, 2006 WL 2329939, at *2-3.  Accordingly, opinions from medical sources who are not "acceptable medical sources" should be considered and given an appropriate weight after considering the factors set forth in 20 C.F.R. § 404.1527(d).  <u>Id.</u> at *4-5; <u>see also</u> <u>Bowman</u>

---

[2] Although Social Security Ruling 06-03p had not been issued at the time the administrative law judge rendered his decision in this case, the ruling is merely a "clarification of existing SSA policies," <u>Sloan v. Astrue</u>, 499 F.3d 883, 888 (8th Cir. 2007), and the Tenth Circuit Court of Appeals has applied it to decisions predating it.  <u>See</u> <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1275 (10th Cir. 2008); <u>Frantz v. Astrue</u>, 509 F.3d 1299,1302 (10th Cir. 2007).  Thus, the Ruling is applicable here.

v. Astrue, 511 F.3d 1270, 1275 (10th Cir. 2008) (remanding decision to Commissioner for consideration of registered nurse's opinion, in light of Social Security Ruling 06-03p).

Based upon Plaintiff's medical records, the administrative law judge determined Plaintiff suffers from mental impairments, including anxiety and cannabis dependence.  Tr. 20.  In November 1999, Plaintiff underwent a psychological evaluation from a licensed professional counselor, Patrick Grose.  Tr. 213-16.  Mr. Grose recommended individual psychotherapy sessions with him and he counseled Plaintiff through the time of the second hearing in 2005.  Tr. 199-216, 387-461, 577-84.  His office notes document her complaints of anxiety and depression and feelings of hopelessness and helplessness.

While Mr. Grose counseled Plaintiff, she also began seeing Dr. David Calenzani, a psychiatrist. Tr. 144. Dr. Calenzani treated Plaintiff from 2000 through 2005, and repeatedly references Plaintiff's inability to work, although it is not clear from the form of his notations whether it is his opinion that Plaintiff cannot work, or whether he is simply recording Plaintiff's self-reported inability to work.  Tr. 137-51, 266-68, 358-64, 485.  However, many of the reports about her inability to work were made during the time period when she was seeking medical retirement from her employer, and during this same time period, Dr. Calenzani clearly encouraged Plaintiff to return to work.  Tr. 140-41.  Dr. Calenzani's office records from 2002-2006 make no mention of her ability to work.  See Tr. 266-68, 363-64, 485.

In 2000, Dr. Calenzani executed a "Healthcare Provider's Report" form supplied by Plaintiff's former employer.  On the form, Dr. Calenzani reported that Plaintiff suffered from

several mental disorders, and he checked a box stating he did not believe Plaintiff could work with limitations.  Tr. 151.  On December 9, 2003, Dr. Calenzani executed another form wherein he opined Plaintiff's mental condition had retrogressed, and that she was not able to work.  Tr. 359-60.  Similarly, in April 2006, Dr. Calenzani executed a form provided by Plaintiff's attorney and he indicated Plaintiff would not be able to work at a regular job on a sustained basis of eight hours per day, five days per week.  Tr. 590.  Dr. Calenzani's explanation for this opinion is that Plaintiff has been "out of work since 2000."  On this form Dr. Calenzani also noted he was not sure, on average, how often Plaintiff's mental impairments or treatment would cause her to be absent from work.  Tr. 590.

On August 4, 2005, Plaintiff was seen by Dr. Richard Swink for a mental status examination.  Tr. 544.  Based upon this examination, Dr. Swink's diagnostic impression was that Plaintiff had anxiety disorder, not otherwise specified, and cannabis dependence.  Tr. 548.  He concluded that her conditions appeared chronic and were likely to continue for the next twelve months.  Tr. 549.  Dr. Swink also executed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) form where he noted that Plaintiff's ability to remember and carry out instructions was not affected by her impairments.  Tr. 550.  Dr. Swink further found Plaintiff's ability to interact appropriately with the public was slightly affected by her impairments, her ability to interact with supervisors was slightly affected, her ability to interact appropriately with co-workers was slightly affected, her ability to respond appropriately to work pressures in a usual work setting was moderately affected, and her ability to respond to changes in a routine work setting was slightly affected.  Tr. 551.  As

support for this conclusion, Dr. Swink cited Plaintiff's history of mental problems and the presence of her anxiety disorder.  He did not believe any other of Plaintiff's vocational capabilities were affected by her mental impairments.  Tr. 551.

First addressing Plaintiff's contention that the administrative law judge erred in refusing to give controlling or even substantial weight to Dr. Calenzani and Mr. Grose's opinions that she is disabled and unable to work, the undersigned notes two flaws.  As the Commissioner has argued, opinions that a claimant is "disabled" or "unable to work" speak to issues reserved to the Commissioner and, thus, are not "medical opinions" entitled to any special significance, let alone controlling weight.  See 20 C.F.R. § 404.1527(e)(1).  Further, because Mr. Grose is not an "acceptable medical source," his opinions are not eligible for controlling weight.  See id. at § 404.1527(a)(2). Accordingly, Plaintiff's contention that the administrative law judge erred in failing to give controlling or even substantial weight to their opinions that she is disabled and unable to work lacks merit.

The only other vocationally significant opinion contained in Dr. Calenzani and Mr. Grose's  records is Dr. Calenzani's April 2006 conclusion that Plaintiff is unable to work at a regular job on a sustained basis of eight hours per day, five days per week.  Tr. 590.  The administrative law judge considered this conclusion but did not give it controlling weight because, as he explained, it lacked supporting "[v]ocational evidence, medically determinable facts, and/or objective test results that might support a finding of inability to perform work-related activities to the extent of being unable to do substantial gainful activity . . . ."  Tr. 24. The administrative law judge's observations are borne out in the medical evidence.  Dr.

11

Calenzani's sole explanation for his conclusion that Plaintiff could not work was merely the fact that she had not done so in six years, and he was unable to give an opinion as to how frequently Plaintiff's mental disorders would cause her to miss work.  Tr. 590.  His office records do not show he performed any clinical or diagnostic testing to determine to what extent, if at all, Plaintiff's mental disorders interfered with her work-related skills such as her ability to understand, remember, and carry out instructions, and her ability to respond appropriately to co-workers and work pressures.  See Tr. 137-51, 266-68, 358-64, 485. Before an opinion can be given controlling weight, the administrative law judge must determine it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques."  Watkins, 350 F.3d at 1300.  Here, the administrative law judge concluded Dr. Calenzani's opinion was not so supported, explained the basis for this finding and, thus, adequately explained why the opinion was not given controlling weight.  Tr. 22, 24.

Nevertheless, the administrative law judge did give Dr. Calenzani's opinion some deference.  This is evident from the fact that the administrative law judge assessed a more restrictive residual functional capacity than what Dr. Swink's Medical Source Statement of Ability to Do Work-Related Activities (Mental) form would support.  Tr. 550-52.  Dr. Swink concluded Plaintiff's mental impairments had no affect on her ability to understand, remember, and carry out instructions; yet, the administrative law judge limited Plaintiff's mental residual functional capacity to tasks involving only short and simple instructions.  Tr. 23, 550.  The administrative law judge also incorporated into the residual functional capacity finding Mr. Grose's observation that Plaintiff responds poorly to pressure by limiting her to

only routine, repetitive, low-stress work.  Id.  There is no basis for Plaintiff's claim that the administrative law judge improperly disregarded and ignored the opinions of her treating counselor and treating physician and interjected his own opinion.

Similarly, the decision refutes Plaintiff's contention that the administrative law judge accorded controlling weight to Dr. Swink's opinion.  Initially, the undersigned notes puzzlement with this argument because Plaintiff does not explain it.  She only baldly asserts, without references to the record, that Dr. Calenzani's office notes contain sufficient information "to figure out that claimant cannot return to work because she cannot function in her own life for any extended period of time.  One need only look at the repeated reports of decompensation and hospitalization to establish that fact."  Plaintiff's Brief, p. 10.  As discussed earlier, Dr. Calenzani's opinion that Plaintiff is unable to work is not entitled to any particular weight and, as the administrative law judge explained, the only vocationally significant opinion he gave was not supported by his records.  Tr. 22.  Since Dr. Calenzani did not render any opinion concerning Plaintiff's vocational abilities, there is no conflict between his and Dr. Swink's.  Even so, and as just discussed, the administrative law judge did not give controlling weight to Dr. Swink's conclusions concerning Plaintiff's vocational abilities.  Accordingly, Plaintiff has not demonstrated the existence of an error in evaluating Dr. Calenzani and Mr. Grose's opinions, and her first point of error does not require a remand.  In making this finding, the undersigned is not in any way minimizing Plaintiff's serious mental problems or the treatment she is and has received for her condition.  The undersigned simply finds that in the Court's limited judicial review of the decision, that the

administrative law judge applied the correct legal standards and his factual findings are supported by substantial evidence.

### 2. Credibility Determination

"When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities." Social Security Ruling 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Some of the factors that may be considered in assessing a claimant's credibility include: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Id. at *3; 20 C.F.R. § 404.1529(c)(3); see also Luna v. Bowen, 834 F.2d 161, 164-66 (10th Cir. 1987). In assessing a claimant's credibility, an administrative law judge must state the evidence upon which he relies, but there is no obligation to undertake a factor-by-factor analysis and discuss every piece of evidence in the record. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). "Credibility determinations

are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).

Plaintiff's overall complaint concerning the credibility finding is that the analysis is deficient because the administrative law judge did not justify his findings.  Plaintiff's Opening Brief, p. 15.  In particular, she claims the administrative law judge adversely used her medical "retirement" in assessing her credibility, misinterpreted a notation that she would benefit from returning to work, and should not have considered the fact that she cares for plants.  Id. at 7, 15.

A review of the decision reveals Plaintiff's arguments lack merit.  First, Plaintiff's contention that the administrative law judge "seems to have a problem with" her referring to the cessation of her employment as "retirement," "did not understand" the circumstances under which Plaintiff stopped working, and alleged use of such statements to determine she was not credible is unsupported.  Id. at 7.  In explaining his residual functional capacity finding, the administrative law judge noted that Plaintiff and Mr. Grose discussed her efforts to obtain medical retirement from her employer during her counseling sessions.  Tr. 24, 200-204, 209, 212.  The administrative law judge also discussed entries in Mr. Grose's records documenting Plaintiff's difficulty adjusting from full-time employment to non-working status along with Mr. Grose's opinion that Plaintiff might benefit from a return to her employment.  Tr. 24.

15

The undersigned sees no basis for Plaintiff's assertion that the administrative law judge "did not understand" the circumstances by which she ceased working.  Indeed, at the hearing, her attorney asked questions concerning her medical retirement.  Tr. 644-45.  Further, even if the administrative law judge did "have a problem with" Plaintiff referring to herself as retired, it is an appropriate consideration in making a credibility finding.  So long as the administrative law judge's credibility findings are supported by substantial evidence, they should not be disturbed.  Kepler, 68 F.3d at 391.  Essentially, Plaintiff is asking the Court to substitute its judgment for that of the administrative law judge and it is inappropriate to do so.  See Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800-801 (10th Cir. 1991).  Further, the administrative law judge did not, as Plaintiff suggests, "misunderstand" the notation that it might be helpful for Plaintiff to return to work.

Moreover, Plaintiff claims the administrative law judge faulted her for taking care of her plants and notes that the occasional performance of household chores does not rise to the level of evidence showing a claimant capable of performing substantial gainful activity.  Plaintiff's Opening Brief, p. 15.  While this statement of the law is true, it has no applicability here.  In addition to discussing the fact that Plaintiff cared for her plants as part of her daily activities, the administrative law judge also discussed Plaintiff's other daily activities, including driving her children around, shopping, cleaning, preparing meals, visiting friends and relatives, preparing to sell her house, and handling her financial affairs.  Tr. 24.  Accordingly, the administrative law judge did not, as Plaintiff implies, take the single fact that she is able to care for her plants out of context and use it to conclude she was not

16

credible.  Instead, the administrative law judge used this fact along with Plaintiff's ability to engage in several other activities of daily living to determine her testimony concerning the limiting effects of her mental impairments was not credible.  This was not error as it is appropriate to consider daily activities when making a credibility determination.  See Luna, 834 F.2d at 166.  Further, the record clearly shows that the administrative law judge had problems with Plaintiff's credibility when she testified during the November 30, 2005 hearing.  Tr. 635-36.

The overall credibility discussion is adequate.  It is clear from the decision that the administrative law judge considered the appropriate factors when assessing Plaintiff's credibility, and he also discussed those factors at length in the decision.  Accordingly, Plaintiff's second point of error does not require a remand.

### B.    Deviation from the Dictionary of Occupational Titles

Plaintiff contends that the vocational expert's testimony varied from the Dictionary of Occupational Titles ("DOT"), and that the administrative law judge did not ask the vocational expert to explain the variances.  Plaintiff's Opening Brief, p. 12.  Plaintiff argues she is precluded from performing the jobs identified by the vocational expert.  Id. at 13.  She complains that without an explanation for the variances from the vocational expert, there is no reviewable step five analysis in the decision.  Id.  Thus, according to Plaintiff, the Commissioner did not sustain his step five burden to prove she is able to perform work existing in significant numbers in the national economy.  Id.

17

The Commissioner responds that there is no deviation between the administrative law judge's testimony and the DOT for the jobs identified by the vocational expert as work Plaintiff is capable of performing.   Response Brief, pp.   10-11.   Alternatively, the Commissioner argues that even if there is an unresolved conflict between the vocational expert's testimony and the DOT, the other jobs identified by the vocational expert as work Plaintiff is capable of performing exist in significant enough numbers that the Commissioner sustained his step-five burden even if the occupations that do not fit Plaintiff's residual functional capacity are eliminated from consideration.   Id. at 13 & n.3.

At step five of the sequential evaluation process, the Commissioner bears the burden to establish that a claimant retains the ability to perform work that exists in the national economy.   See Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir. 1989).   In making this determination, the administrative law judge may rely on the services of a vocational expert. 20 C.F.R. § 404.1566(e).   Because a disability hearing is non-adversarial, an administrative law judge has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised, even when the claimant is represented by counsel. Thompson v. Sullivan, 987 F.2d 1482, 1492 (10th Cir. 1993).   "Questioning a vocational expert about the source of his opinion and any deviations from [the Dictionary of Occupational Titles] falls within this duty." Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); accord Social Security Ruling 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). Thus, an administrative law judge "must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the

[administrative law judge] may rely on the expert's testimony as substantial evidence to

support a determination of nondisability."  <u>Haddock</u>, 196 F.3d at 1091.

At the hearing, the administrative law judge described a hypothetical individual:

I'm going to limit this hypothetical to a wide range of light work.  And this individual would work in relative isolation with limited contact with peers and supervisors, although there would be some, some contact, but on a sliding scale, it would be relatively infrequent.  This individual would perform routine, repetitive, low stress work, – performing one and two step tasks, supported by simple instructions. . . Would any work be available?

Tr. 650.  The vocational expert testified:

Yes, I think we'd be looking primarily at unskilled occupations with this hypothetical. Some examples would include a photo finish lab worker.  That occupation is light, unskilled.  Number of jobs in Oklahoma estimated at 600 and in the United States, 105,000.  Another example would be a table worker.  That is a sedentary, unskilled occupation.  Number of jobs in Oklahoma 500.  U.S. 39,000.  A third example would be a polisher.  Also sedentary, unskilled.  Number of jobs estimated in Oklahoma 600.  In U.S. 78,000.

Tr. 650.  The administrative law judge did not ask the vocational expert to state whether her

testimony varied from the DOT or, if it did, to explain why.  Tr. 650-51.

There are several entries in the DOT for each of the occupations the vocational expert

testified a hypothetical individual with Plaintiff's residual functional capacity and vocational

background could perform.  Plaintiff cites occupational code no. 920.587-018 for "Table

Worker (any industry)," which has a medium exertional requirement, as support for her

claim an unexplained variance exists because the administrative law judge limited Plaintiff

to light work.  Plaintiff's Opening Brief, p. 13.  However, as the Commissioner has

observed, there is a table worker occupation in the DOT that fits the conditions of the

administrative law judge's hypothetical question, which contained all the residual functional capacity limitations eventually made in the decision.   "Table Worker" occupation no. 739.687-182 is a sedentary occupation, and thus falls within the exertional limitations of Plaintiff's residual functional capacity, and has a Specific Vocational Preparation ("SVP") category of 2, meaning it takes no more than one month to learn, and thus falls within the mental limitations the administrative law judge assessed.   See 20 C.F.R. § 404.1568(a); see also Chavez v. Barnhart, No. 03-2298, 126 Fed. Appx. 434, 436 (10th Cir. Feb. 3, 2005).[3] This appears to be the only table worker position that would fit within the constraints of the administrative law judge's hypothetical question.   Given that the vocational expert identified a "table worker" position in direct response to the administrative law judge's question containing several limitations, it seems disingenuous to conclude the vocational expert was referring to any table worker positions other than the one that fits the hypothetical.   That the vocational expert did not disclose the occupational code number assigned to the table worker position to which she was referring does not create doubt about what she meant. Accordingly, contrary to Plaintiff's contention, there is no variance between the vocational expert's testimony and the DOT with respect to the table worker occupation.

Similarly, there is also no variance between the DOT and the vocational expert's testimony that a hypothetical person with Plaintiff's residual functional capacity could perform a "polisher" occupation.   As with the table worker occupation, the DOT contains

---

[3] This and any other unpublished disposition cited as persuasive authority pursuant to Tenth Circuit Rule 32.1.

several "polisher" occupations.  Plaintiff argues she would be precluded from performing the "Polisher (any industry)" occupation no. 705.684-058 because it is medium work. Plaintiff's Opening Brief, p. 13.  But the Commissioner correctly describes two polisher occupations that fit the given conditions of the administrative law judge's hypothetical: eyeglass frames polisher, occupational code no. 713.684-038, and implant polisher, occupational code no. 713.687-034.  As both occupations are sedentary work, they fit the administrative law judge's exertional limitations, and both are within the mental limitations too because they are classified at SVP 2.

However, the photofinish lab worker occupation the vocational expert identified is more problematic.  The DOT's "photofinishing laboratory worker" description is light work but has an SVP level of 3.  Dictionary of Occupational Titles, Occupation Code No. 976.687-018, (4th ed. 1991).  An SVP level of 3 indicates it may take over one month and up to three months to "learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  Id. at App. B.  Thus, it is not unskilled work, to which the vocational expert understood the hypothetical individual to be limited.  Tr. 650; Social Security Ruling 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).  Further, the photofinishing laboratory worker position is described in the Selected Characteristics of Occupations as involving "detailed but uninvolved written or oral instructions."  Dictionary of Occupational Titles, Occupation Code No. 976.687-018. Accordingly, it appears this occupation may be at odds with the administrative law judge's determination that Plaintiff retains the mental functional capacity to remember only short

and simple instructions.  Assuming for the moment that the vocational expert's testimony varied from the DOT, it was, as Plaintiff argues, error for the administrative law judge not to inquire about the variance and elicit testimony explaining the variance.  Haddock, 196 F.3d at 1091.  Nevertheless, the Commissioner argues, and the undersigned agrees, an error here would not necessitate remand.  The Tenth Circuit Court of Appeals has refused to draw "a bright line establishing the number of jobs necessary to constitute a 'significant number'" of jobs to support a finding that work exists in the national economy.  Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992).  Instead a reviewing court must:

> consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on.

Id. (quotation omitted).  The determination "should ultimately be left to the [administrative law judge]'s common sense in weighing the statutory language as applied to a particular claimant's factual situation."  Id.; accord Allen v. Barnhart, 357 F.3d 1140, 1144 (10th Cir. 2004).

A review of the transcript of the second hearing and the decision demonstrates the administrative law judge considered the appropriate factors before concluding Plaintiff is not disabled.  First, the administrative law judge considered Plaintiff's combination of impairments.  Specifically, he noted Plaintiff's anxiety and cannabis dependence and allegations of several physical maladies, but concluded she retained the physical capacity to perform light work with restrictions to accommodate her mental impairments.  Tr. 20-24.

Additionally, there is no reason to question the expertise of the vocational expert as she provided the administrative law judge information concerning her background and experience and considered Plaintiff's testimony and vocational history before testifying. Tr. 301 -302, 646. Third, the administrative law judge discussed in the decision that Plaintiff engaged in several different activities during her day, including driving, so it does not appear that her impairments would preclude travel to and from work. Tr. 24. The administrative law judge also received testimony concerning the number of jobs identified by the expert, specifically that there is a total of 1,100 table worker and polisher jobs in Oklahoma and 117,000 nationally. Tr. 26, 650. Finally, the administrative law judge considered Plaintiff's past relevant work and the vocational expert's testimony that she acquired transferrable skills from her previous employment. Tr. 646-47. The record as a whole demonstrates the administrative law judge considered Plaintiff's unique situation prior to concluding work existed in significant numbers such that a finding of nondisability was appropriate.

If the photofinish lab worker occupation is excluded, there would still be 1,100 jobs in Oklahoma a person with Plaintiff's limitations could perform. Tr. 650. Courts have determined that significantly fewer available jobs still constituted substantial evidence to support a finding that work that existed in "significant numbers." See, e.g., Trimiar, 966 F.2d at 1332 (finding that 650 to 900 jobs in Oklahoma is significant number of jobs); Prince v. Apfel, No. 97-5176, 1998 WL 317525, at *3 (10th Cir. June 11, 1998) (350 jobs in Oklahoma and 50,000 nationwide as a gate tender and 50 jobs in Oklahoma and 20,000 nationwide as a night watchmen constituted significant number of jobs); Rother v. Chater,

No. 96-6370, 1997 WL 196692, at *2 (10th Cir. Apr. 23, 1997) (573 jobs in the local economy supported determination that claimant could perform work which exists in significant numbers in the local economy); Scott v. Shalala, No. 94-5083, 1994 WL 708217, at *2 (10th Cir. Dec. 21, 1994) (finding that work exists in significant numbers based on 195 lens cutter jobs in Oklahoma was supported by substantial evidence).   Based upon the administrative law judge's consideration of Plaintiff's particular ability to work, the undersigned concludes the administrative law judge's finding that work Plaintiff could perform exists in significant numbers is supported by substantial evidence even if the photofinish lab worker position is eliminated from consideration.   See Trimiar, 966 F.2d at 1330.   Therefore, the Commissioner sustained his step five burden and the decision should be affirmed.

## **RECOMMENDATION**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the final decision of the Commissioner of Social Security Administration be affirmed.

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by May 29, 2008, in accordance with 28

U.S.C. § 636 and Local Civil Rule 72.1. This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 9th day of May, 2008.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE